979 F.2d 856
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Clarence F. TINSLEY; Marion Tinsley, Plaintiffs-Appellees,
v.
SEA-LAND CORPORATION, a corporation, Defendant-Appellant.
 No. 91-35762.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1992.
Decided Nov. 20, 1992.
 
 Before JAMES R. BROWNING, DAVID R. THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Sea-Land timely appeals the district court's determination of comparative negligence. We affirm for the reasons that follow. Sea-Land also appeals the district court's award of postjudgment interest from the date of the original judgment. We affirm this award in a separate published opinion.
 
 I.
 
 3
 Sea-Land argues that the district court, contrary to our decision in the first appeal, improperly inferred Sea-Land was aware of the danger of reading third-tier temperature dials without a catwalk. While the district court judge did suggest he believed Sea-Land knew of the danger (ER 69), he acknowledged this court's contrary finding and that he could not overturn it. (ER 70-71). In any event, this court may affirm a district court's decision on any ground fairly supported by the record, "even if the district court relied on the wrong grounds or wrong reasoning." Marino v. Vasquez, 812 F.2d 499, 508 (9th Cir.1987). Even if the district court improperly considered Sea-Land's knowledge in determining comparative negligence, its finding that plaintiff was ten percent negligent is adequately supported by the remaining evidence. See Part III.
 
 II.
 
 4
 Sea-Land argues the district court committed an error of law by allocating the most fault to the party least able to avoid injury. The cases Sea-Land relies on are inapposite. See DuBose v. Matson Navigation Co., 403 F.2d 875 (9th Cir.1968); Superior Oil Co. v. Trahan, 322 F.2d 234 (5th Cir.1963); Meintsma v. United States, 164 F.2d 976 (9th Cir.1947). None of these cases involved a condition, like the one at issue here, that could not have been remedied without major structural changes. Trahan and Meintsma involved failure to make a simple request for assistance. Meintsma, 164 F.2d at 977 (instead of jumping from the gangplank to the dock, plaintiff should have asked someone to lower it); Trahan, 322 F.2d at 237 (plaintiff should not have jumped from one moving vessel to another without requesting assistance). In Dubose, the defendant, had it known of the problem, could have avoided injury to a scullion who was repeatedly bumped by workers carrying dishes to be washed, simply by changing the route of those who carried the dishes. 403 F.2d at 878. In each of these cases, it was fair to assume the defendant would have responded had the plaintiff called the problem to the defendant's attention. In this case, by contrast, as we discuss below, the district court was not clearly wrong in finding it was unlikely that Sea-Land would have taken corrective action if Tinsley had reported the danger.[1]
 
 III.
 
 5
 The district court's assessment of comparative negligence was not clear error.[2]
 
 
 6
 In ordinary negligence cases, the determination of comparative negligence requires an assessment of the relative fault of the parties. 4 Harper, James & Gray, The Law of Torts § 22.16 at 395-96 (2d ed. 1986). In such cases, the negligence of the parties is weighed without regard to the extent to which either party's conduct proximately caused the injuries. Id. Where a ship is found unseaworthy, however, the owner is strictly liable regardless of fault, Miles v. Melrose, 882 F.2d 976, 981 (5th Cir.1989), and we compare causation rather than fault. Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co., 565 F.2d 1129, 1139 (9th Cir.1977) (" 'comparative causation' is a conceptually more precise term than 'comparative fault' since fault alone without causation does not subject one to liability") (citation omitted). See generally Schoenbaum, Admiralty and Maritime Law § 5-3 (1987); 4 Harper, James & Gray, The Law of Torts § 22.16 at 395-96, 399-400. The defendant bears the burden of proving the extent to which the plaintiff's negligence proximately caused his injuries. See Johnston v. Pierce Packing Co., 550 F.2d 474, 478 (9th Cir.1977); see also 2 Norris, The Law of Seamen § 27:19 at 243 (4th ed. 1985).
 
 
 7
 Tinsley's failure to advise Sea-Land of the danger of reading third-tier temperature dials without a catwalk may have been a "but for" cause of his injuries. To determine whether this failure proximately caused Tinsley's injuries, however, a critical question remains to be answered; namely, whether Sea-Land, had it been warned by Tinsley, would have installed catwalks or relieved Tinsley of his obligation to read third-tier temperature dials.[3] While Sea-Land makes plausible arguments for blaming the accident more on Tinsley than Sea-Land, nevertheless the district court's determination must be upheld unless clearly erroneous. Accordingly, we review the record to see whether it supports the conclusion of the district court, subject to that highly deferential standard of review.
 
 
 8
 During the hearing on remand, the district court stated "[t]he problem is it's the last load in. And my experience in hearing these cases: once those kind [sic] of ships are loaded and lashed, they cast off those lines. [Defendant's attorney has] to argue: No, they wouldn't have done that; they would have built a catwalk." (ER 67). According to Sea-Land, this comment reveals the district court did not understand that catwalks could have been welded onto the stacking frames long before the ship was loaded. Sea-Land argues its prompt response to other concerns raised in monthly safety meetings demonstrates Sea-Land would have remedied the problem had the danger been reported. (Supp. ER).
 
 
 9
 It is not so clear, however, that Sea-Land would have built permanent third-tier catwalks for the frames. At trial, William Prindiville, Sea-Land's Region Manager of Fleet Operations, testified that permanent catwalks were a "continuous maintenance problem" and were not worth installing simply because they might be needed on a few voyages a year:
 
 
 10
 They bang against the buttresses, they get smashed up when they get handled on the dock, they get damaged when they are stacked on top of each other on the vessel. So anytime there is a catwalk there, it is a struggle to maintain it in a safe working condition.
 
 
 11
 Since we know we would be carrying reefers on the second tier of No. 4 on a regular basis, to have that catwalk on the upper stacking frame hanging over your head all 35 voyages of the year, when there is a need for it on those 5 voyages only, there would be a hazard to somebody working under there.
 
 
 12
 (Tr. 301-02).
 
 
 13
 While Sea-Land argues reports from periodic safety meetings indicate it was responsive to suggestions, the matters raised primarily involved minor repairs or simple requests, such as painting ladders yellow so they could be seen at night. On the other hand, the addition of a catwalk would have been a major structural change requiring approval of fleet operations and the ship construction department. (Tr. 310, 315). Accordingly, the district court was not clearly wrong in finding it was unlikely Sea-Land would have built either a permanent catwalk in advance or a temporary structure just before "cast off."
 
 
 14
 Similarly, the evidence as to whether Sea-Land would have relieved Tinsley of the obligation to monitor third tier temperature dials is far from clear. Prindiville testified hard frozen loads were stored in the upper tiers because they could survive the voyage without monitoring if weather conditions made temperature reading of upper tiers prohibitive. (Tr. 310). However, Donald Frank Miley, a retired Sea-Land captain, testified a chief mate could not have refused to read third tier temperature dials. He stated: "such a refusal wouldn't be looked on kindly by either the master of the vessel or the marine superintendent or anybody else, since this type of activity was done by chief mates throughout the rest of the fleet, and if you cared to advance in the company, you wouldn't make that kind of objection." (Tr. 54). Moreover, there was substantial testimony regarding the importance of monitoring temperature, especially when the ship was carrying a large cargo. Under such circumstances, there would be more reefer vans than available electrical sockets, and plugs would have to be rotated to maintain temperatures in all of the reefers. (Tr. 275), (Deposition of Michael Eugene Bagley at 5, 34-35), (Deposition of James Anthony Ramirez at 14, 26). Finally, Sea-Land offered no evidence it would have put an end to third tier temperature reading if it had been advised of the danger. Indeed, it did not make this argument at trial but first advanced it after the case had been remanded to the district court for an assessment of comparative negligence. Sea-Land offered no additional evidence on this issue on remand but simply argued on the basis of evidence offered at trial that company policy permitted Tinsley to refuse to read third tier reefer temperature dials if he believed it to be dangerous.[4]
 
 
 15
 Because Sea-Land bore the burden of proof and there was significant evidence that Sea-Land would not have installed third-tier catwalks or abandoned temperature reading of third-tier reefers, the district court's finding that plaintiff's failure to report the dangerous condition was no more than ten percent of the cause of his injuries was not clearly erroneous.
 
 IV.
 
 16
 Sea-Land argues Tinsley should be held to a higher standard of care because of his position as chief mate. The first treatise Sea-Land cites merely suggests the plaintiff's sailing experience is a relevant consideration in determining contributory negligence. See IB Benedict on Admiralty § 25 at 3-102 (7th ed. 1991). The section of the second treatise Sea-Land quotes is of no relevance here. It discusses discharge of crewmen and officers and suggests that an officer's minor disobedience need not be tolerated because an officer holds a position that requires a high degree of responsibility. See 1 Norris, The Law of Seaman 612-13. Finally, Skandalis v. M/V Galini, 1974 AMC 1671 (E.D.Va.1974), on which Sea-Land also relies, is inapposite. In that case, a second mate, who was injured while moving a heavy box, was found to be contributorily negligent because he failed to use his authority to ask an inferior seaman to help him. Id. at 1673-75. While Tinsley was chief mate, the individuals who could have approved a change in stacking frame structures or relieved him of temperature reading duties--namely, someone in fleet operations or the ship construction department--were superior to Tinsley in the chain of command. Plaintiff's authority is relevant only to the extent it might have been employed to avert the danger.
 
 V.
 
 17
 Relying on Pan-Alaska Fisheries, Inc., 565 F.2d 1129, Sea-Land argues that where contributory negligence is found in a strict liability case, greater weight should be given to the plaintiff's negligence. Because Sea-Land was held strictly liable, no finding was ever made as to whether Sea-Land was at fault. Accordingly, Sea-Land argues it should be liable for significantly less damages than Tinsley, who was found to have been negligent. The Pan-Alaska Fisheries case, however, does not support this proposition. To the contrary, as discussed earlier, Pan-Alaska Fisheries held the appropriate comparison is relative causation not relative fault. 565 F.2d at 1139.
 
 
 18
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We relied on Dubose in the first appeal in support of the rule that failure to report a dangerous condition may bar recovery. As we note below, the district court's finding that Sea-Land would not have corrected the condition reduced the extent to which Tinsley's negligence contributed to his injuries
 
 
 [2]
 Tinsley argues this court should not reach this issue because Sea-Land failed to raise it at trial and addressed it for the first time in the first appeal. The issue of Tinsley's contributory negligence was decided by the panel that heard Sea-Land's first appeal without objection from Tinsley. Tinsley has waived any objection to consideration of this issue by failing to raise the objection in the first appeal
 
 
 [3]
 Sea-Land's argument that it should be absolved of liability entirely because Tinsley was "in the best position to avoid the casualty" fails because it ignores this critical question
 
 
 [4]
 We squarely rejected this argument in the first appeal. Tinsley, No. 89-35278 Slip op. at 10 (9th Cir. Oct. 29, 1990) ("[T]he company directive only authorized Tinsley to abstain from checking reefer temperatures in circumstances such as heavy weather. Under normal conditions, he was expected to climb all reefer stacks, including those without third-tier catwalks.")